## HARMON v. FELDHEIM.

BANKRUPTCY—PREFERENCES—VALIDITY.

An assignment of commercial paper, made by a firm of bankers, two weeks before they were adjudicated bankrupts, to secure a depositor, was sustained; it appearing to the satisfaction of the court that neither the beneficiary nor his agent had reasonable cause to believe, at the time of the assignment, that the assignors were insolvent.

Appeal from Wayne; Donovan, J. Submitted June 5, 1902. (Docket No. 19.) Decided September 30, 1902.

Bill by Henry A. Harmon, trustee of Albert Ives, Butler Ives, and Albert Ives, Jr., bankrupts, against Adolph Feldheim and Leo M. Butzel, trustee, to set aside an assignment of collateral as a preference under the bankruptcy law. From a decree dismissing the bill, complainant appeals. Affirmed.

Albert, Butler, and Albert Ives, Jr., constituted the banking firm of Ives & Sons, which, at the time of the transactions complained of, had been engaged in business for more than 30 years. The firm had a fine commercial rating, and had enjoyed a good standing in commercial circles. Defendant Feldheim had been a depositor of the bank for five years. In July, 1900, he had three certificates of deposit, aggregating $27,000, and bearing interest at 4 per cent. Thirty days' notice was required before he could draw the money. Desiring to make other investments, he gave the firm notice on July 7, 1900, that he would require $17,000 in 30 days. The firm informed defendant at the end of that time that they could not pay the amount just then, and he then placed the matter in the hands of his attorney, defendant Butzel. Mr. Butzel examined into the affairs of the bank, and consulted Mr. Don M. Dickinson, who was a depositor in the same bank, and had an intimate acquaintance with the members of the firm. Butzel and other members of his family were also at the same time large depositors. The result of the negotiations was the execution on August 28, 1900, of the following agreement:

" *Whereas,* A. Ives & Sons are desirous of borrowing the sum of twenty-five thousand dollars from said Adolph Feldheim; and

" *Whereas,* the said Adolph Feldheim has on deposit the sum of twenty-five thousand dollars in cash now due and payable and subject to present withdrawal in currency; and

" *Whereas,* the said Feldheim is willing to loan such sum to said A. Ives & Sons if satisfactorily secured concurrently with the making of said loan:

"Now, therefore, in consideration of the loan of twenty-five thousand dollars to A. Ives & Sons by said Feldheim, and in consideration of the sum of one dollar paid to said firm by said Feldheim, and for the purpose of inducing the making of said loan, the said firm of A. Ives & Sons hereby convey, set over, assign, and pledge unto Leo M. Butzel, as trustee, a certain lot of commercial paper as collateral to said loan. (A list of said paper is hereto attached,

and made part of this agreement, and all of said paper is now delivered to said trustee.) And the said first party does further, in consideration of the premises, set over and assign to said trustee sufficient other good and collectible paper or securities belonging now or hereafter to belong to said first party, for the purpose of realizing unto said trustee sufficient moneys to pay unto said second party the aforesaid sum of twenty-five thousand dollars. The said trustee is authorized to make such selection.

"The said trustee, in consideration of the premises, and the sum of one dollar paid to him by each of said first and second parties, agrees to and with said parties as follows:

"(1) He will retain possession of said paper, and upon the repayment to said second party by said first party will return the same to said first party: *Provided*, however, that said trustee may, in his discretion, deliver the manual possession of such portions of such paper as he shall deem fit to said first party, who shall, for him, collect and take all due steps necessary to the collection of said paper, the said paper and the proceeds thereof to belong and be the property of said trustee under the terms and conditions of this agreement; and the said first parties agree to give a receipt upon the delivery of such paper to them, satisfactory in form to said trustee.

"(2) It is agreed between all the parties hereto that the period of said loan is $5,000 for three days from date, $5,000 for five days from date, $5,000 for five days from date, $5,000 for ten days from date, $5,000 for twenty days from date.

"(3) It is agreed that the time of this loan may be extended, or said loan may be renewed, at the expiration of the aforesaid dates, upon the giving or the continuing of collateral satisfactory.

"(4) The said first parties may, upon the replacing of any paper by other satisfactory paper, repossess themselves of any particular paper during the period of this trust and of this loan.

"(5) The said trustee shall keep the collateral where the said first party may, upon compliance with paragraph 4, easily and quickly exchange said paper.

"(6) In case of default by said first parties of any of the obligations by them agreed to herein, the said trustee is hereby vested with all the right, title, and interest in and to the said collateral that said first party has or may hereafter at any time have; and the said trustee is author-

ized to take any steps which, in his judgment, are necessary to protect said second party's interests, and to use the name of said first party in such proceedings, and to declare the entire sum due forthwith.

"(7) It is also understood and agreed that said first party also conveys to said trustee all property of every description, personal and real, which secures any of the paper trusteed herein; and upon demand of said trustee he shall be given, in case of default, manual possession of all the evidences of such property.

"(8) The said A. Ives & Sons agree to pay the aforesaid sums and interest accrued or to accrue, and to issue certificates of deposit therefor; and the said trustee is authorized upon said certificates of deposit to make any proper indorsements indicating this agreement.

"(9) This agreement is to be kept absolutely secret."

Complainant, the trustee in bankruptcy, filed this bill in chancery to set aside this agreement and recover the securities mentioned therein. Issue was duly joined, proofs taken in open court, and the bill dismissed.

*Thomas A. E. Weadock*, for complainant.

*Elliott G. Stevenson*, for defendants.

GRANT, J. (*after stating the facts*). Section 60 of the bankrupt act (subdivisions *a* and *b*) reads as follows:

"(*a*) A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

"(*b*) If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person." 30 U. S. Stat. p. 562.

The sole question presented is: Did Mr. Feldheim and his attorney, Mr. Butzel, acting for him, have reasonable cause to believe that Ives & Sons were insolvent, and made the assignment with intent thereby to give a preference? The court below, in a written opinion, found that they did not. In this finding we concur. We deem it unimportant to set forth the evidence upon which the finding is based. It would not form a precedent of any value to the profession. We are satisfied that Ives & Sons did not at the time of the assignment contemplate bankruptcy, and that both defendants had no information which led them to believe, or which should have caused them to believe, that the firm was insolvent. All the suspicious features of the contract are fully explained by the testimony.

The decree is affirmed, with costs.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred.